UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FULL SAIL, INC.,

    Plaintiff,

-vs-                                       Case No. 6:03-cv-887-Orl-31JGG

RYAN SPEVACK d/b/a Shitty Schools, Inc.,
JOSHUA SLOAN d/b/a Sloan Tech, Inc.,
KRISTA BELANGER and ZERO ONE
ENTERTAINMENT,

    Defendants.

_____

## ORDER

This cause comes for the Court's consideration on:

1) Defendants Ryan Spevack and Zero One Entertainment's Motion to Dismiss (Doc. 14) and Plaintiff's Opposition thereto (Doc. 23); as well as

2) Defendant Sloan d/b/a Sloan Tech, Inc.,'s Motion to Dismiss (Doc. 35) and Plaintiff's Opposition thereto (Doc. 41).

The Court also will consider Defendants Ryan Spevack and Zero One Entertainment's Motion to Strike Portions of Certain Affidavits (Doc. 38). The Court heard oral argument on October 15, 2003.

### I. Background

Plaintiff Full Sail is a school of approximately 4,000 students located in Winter Park, Florida. Defendant Zero One Entertainment ("Zero One") is a not-for-profit film production



corporation based in Arizona. Defendant Ryan Spevack, a 20-year old student at the University of Advancing Technology ("UAT") in Tempe, Arizona, serves as Zero One's president and chief operating officer. Defendant Joshua Sloan is a teacher at UAT who, d/b/a Sloan Tech, Inc., operates the hosting service GetaHostNow.com. Defendant Krista Belanger[1] is a former Full Sail employee who was terminated on April 21, 2003, for insubordination.

Following her termination, Belanger began a Web site, geocities.com/I hate Full Sail, which has since been discontinued. On May 27, 2003, Spevack/Zero One[2] began two Web sites, fullsailsucks.com and shittyschools.com, using information from Belanger's site. Sloan d/b/a Sloan Tech served as the sites' host. Generally, fullsailsucks.com and shittyschools.com[3] are informational sites that provide a method for third parties to post comments about Full Sail and other schools. Although Zero One was the original registrant of the sites, Spevack d/b/a Shitty Schools, Inc., now serves as the registrant.

On June 27, 2003, Plaintiff sued Defendants for: 1) tortious interference of advantageous business relationships under state law, and 2) dilution by tarnishment of registered trademarks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).[4]

---

[1] This Court denied Belanger's Motion to Dismiss (Doc. 34) because she answered the Complaint. (Doc. 6)

[2] For purposes of convenience, the Court will use the term "Spevack/Zero One," who moved to dismiss in the same motion, and who are represented by the same counsel.

[3] Shittyschools.com is no longer operational.

[4] The Court assumes for purposes of this Order that Full Sail has a valid trademark.

Spevack/Zero One and Sloan now separately move to dismiss on several grounds: 1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); 2) improper venue pursuant to Rule 12(b)(3); and 3) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II. Standard of Review

In ruling on a motion to dismiss, the trial court must view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed.R.Civ.P. 10(c). *See also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The court will take the complaint's allegations as admitted by the defendants and liberally will construe them in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). A court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III. Analysis

A court must determine whether it can exercise personal jurisdiction over the defendants prior to analyzing the other two grounds for dismissal. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action."). A plaintiff bears the burden of pleading sufficient material facts to establish a basis for personal jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the plaintiff satisfies his prima facie burden, the defendants may submit affidavits or other competent proof to show that personal jurisdiction is lacking. *Id.*; *Miami*

*Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1328 (S.D. Fla. 2001). In this case, the Court will consider only those portions of the submitted affidavits that set forth factual declarations within the affiant's personal knowledge. *Posner*, 178 F.3d at 1215.[5]

To determine if personal jurisdiction exists, a court must conduct a two-part inquiry. First, this Court must assess whether a provision of Florida's long-arm statute applies. *Future Tech. Today, Inc.*, 218 F.3d at 1249 (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996)); *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983). If so, then the Court will inquire whether the Due Process Clause has been satisfied, including sufficient minimum contacts and satisfaction of traditional notions of fair play and substantial justice. *Future Tech. Today, Inc.*, 218 F.3d at 1249; *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000).

### A.     The Long-Arm Statute

Plaintiff here claims that the Court has personal jurisdiction over Defendants under Florida's long-arm statute § 48.193(1)(b).[6] In relevant part, § 48.193 states:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from doing any of the following acts:
> . . .
> (b) Committing a tortious act within this state.

---

[5] For this reason, the Court will deny Spevack/Zero One's Motion to Strike as moot.

[6] Plaintiff also asserts that personal jurisdiction exists under Florida Statute § 48.193(1)(f)(1), which deals with injury to persons or property if the defendant engaged in solicitation or service activities within Florida.

Fla. Stat. § 48.193(1)(b).

For personal jurisdiction based on a tortious act, a plaintiff must allege sufficient facts that the substantial aspects of a tort occurred in Florida. *Miami Breakers,* 140 F.Supp. 2d at 1329; *Nida Corp.,* 118 F. Supp. 2d at 1226. The Court must examine the long-arm statute as would the Florida Supreme Court, for the reach of the statute poses a state law question. *Nida Corp.,* 118 F. Supp. 2d at 1226. In the instant case, two separate tortious acts are alleged – 1) tortious interference with business relationship, and 2) dilution of trademark. Because federal jurisdiction would be founded upon the trademark claims, however, the Court need only address the Lanham Act conduct.

Case law dictates that injury from trademark infringement occurs in the state where the trademark owner resides. *Nida Corp.,* 118 F.Supp. 2d at 1228 (citing *JB Oxford Holdings, Inc. v. Net Trade, Inc.,* 76 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999)). Thus, any injuries resulting from dilution of trademark in this case necessarily occurred in Florida because the trademark owner – Full Sail – is located only in Florida.

Even if Plaintiff has shown that § 48.193(1)(b) of Florida's long-arm statute applies,[7] the inquiry for personal jurisdiction is not over. The Court must now assess whether Plaintiff has established the existence of sufficient minimum contacts and whether Due Process is otherwise satisfied.

---

[7] Having found that § 48.193(1)(b) of the Florida long-arm statute applies, the Court need not inquire whether Plaintiff has satisfied the requirements of § 48.193(1)(f).

B.  **Due Process – Minimum Contacts**

The Court first will analyze whether Plaintiff has met its burden with regard to Spevack/Zero One and second will analyze whether it has met its burden with regard to Sloan.

1.  **Spevack/Zero One**

A court must conduct a three-part analysis to determine if minimum contacts exist: 1) whether defendant purposefully availed himself of the privilege of acting in the forum state; 2) whether the claim arose from the defendant's activities in the forum state; and 3) whether the defendant's acts or consequences therefrom had a substantial connection with the forum state such that the defendant should reasonably anticipate being haled into court there. *Posner*, 178 F.3d at 1220 (11th Cir. 1999); *Future Tech. Today*, 218 F.3d at 1250; *Sculptchair,* 94 F.3d at 631; *Nida Corp.*, 118 F. Supp. 2d at 1229.

Plaintiff claims that Spevack/Zero One purposefully availed themselves of the privileges of Florida by: 1) operating two Web sites, fullsailsucks.com and the now defunct shittyschools.com, that are "active;" and 2) by aiming the alleged tortious conduct toward Florida. These two asserted grounds for purposeful availment require separate inquiries. *Revell v. Lidov*, 317 F.3d 467, 471-72 (5th Cir. 2002).

a.  **Passive v. Active Web Site**

As the Internet becomes ubiquitous, more courts are addressing the difference between active and passive Web sites for purposes of personal jurisdiction. Many of these courts have been persuaded by the "sliding scale" notion of doing "business" over the Internet developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119 (W.D. Pa. 1997). On one end

of the scale, a defendant clearly is subject to personal jurisdiction because it enters into online contracts with Internet patrons. *Id.* at 1124. For example, the Sixth Circuit found that, by knowingly entering into an online contract with an Ohio resident and repeatedly transmitting files via the Internet to the Ohio resident, the defendant purposefully directed his commercial activity to Ohio and thereby subjected himself to its jurisdiction. *Id.* (summarizing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). In *Miami Breakers,* the court determined that an active site sufficient for personal jurisdiction is one that allowed a consumer to enter into a contract with the defendant over the Internet, e.g., by allowing for order and purchase of items online. 140 F. Supp. 2d at 1329.

At the other end of the scale are passive Web sites. *Zippo*, 952 F. Supp. at 1124. A passive site is one that "does little more than make information available to those who are interested in it...." *Id.* For example, a non-interactive site posting general information – e.g., ticket information and a schedule of events – is passive, for it does not permit a consumer to purchase items or enter into a contract online. *Id.* at 1125 (describing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996)). In *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir. 1999), the court found the site at issue passive because it did not permit the taking of orders online; rather a user had to print the order form from the Web site and remit it via regular mail. *Id.* at 337.

In the middle of the scale are interactive sites that allow a user to exchange information with the host computer. *ComputerUser.com, Inc. v. Tech. Publ'ns, LLC,* 2002 WL 1634119 at *7 (D. Minn. July 20, 2002) (citation omitted). A site is interactive if it allows a visitor to send and

receive information via an online bulletin board or open forum. *Revell*, 317 F.3d at 472 (finding the site's bulletin board to be interactive because a visitor could participate in an open forum that allowed the user himself to post an article). In such a case, jurisdiction depends on the level of interactivity and the degree to which the information exchange is commercial. *Id.*; *ComputerUser.com*, 2002 WL 1634119 at *7. In *ComputerUser.com*, the Court found that a site was interactive because it received thousands of online contestant applications for a "Sexiest Geek Alive" contest, contained interactive features such as a mandatory message board, and offered a free e-mail account which allowed a user to request promotional material and access special offers. *Id.* at *7-8. Construing the facts in a light most favorable to the plaintiff, the court found that sufficient minimum contacts with the forum state existed. *Id.* at *8.

### i.     Fullsailsucks.com

Plaintiff argues that fullsailsucks.com, which is operated out of Arizona, (Doc. 16[8] at ¶ 14), is active in large part because it offers to pay $100 to any person who takes a photo in front of Full Sail holding a placard reading "fullsailsucks.com." (Doc. 25, Ex. 1). This offer, however, does not render the site active. Spevack/Zero One[9] have not enjoyed any revenue or financial benefit as result of the offer or the site in general. (Doc. 16 at ¶12). In fact, if anything, they risk losing

---

[8] Spevack filed an affidavit at Document 16.

[9] Zero One claims that it, as a past registrant of the Web site at issue, should not be "dragged into a suit." (Doc. 14 at 6). The fact that the entity is the past and not the current registrant does not make it immune from suit.

In addition, Spevack/Zero One contends that they cannot be subject to this Court's jurisdiction based merely on Defendant Belanger's residence in this District because they have met nor have had known contact with Belanger. If the Court finds that Spevack/Zero One are subject to its jurisdiction, however, it will not be on the grounds that they know or have had contact with Belanger.

money by offering to pay $100 to every person who accepts the online offer. (Doc. 25 at ¶8); *Nida Corp.*, 118 F. Supp. 2d at 1231 (finding that the defendant derived over $27,000 in revenue from sales of its products in Florida, and thus the site was active). In any event, the offer need not be accepted by a Florida resident.[10] Indeed, even though the ultimate performance of the offer must occur in Florida, a person from any state could accept the offer and come to Florida to fulfill it. The offer, therefore, is not purposefully directed at Florida readers. *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (noting that a site must manifest an intent to target and focus on the readers of the forum state in order to be deemed purposefully directed at the forum);[11] *JB Oxford Holdings*, 76 F. Supp. 2d at 1367 (noting that the persuasive case law following *Zippo* requires more than simply contacts that "link with equal strength the defendant to all states."). If courts were to hold otherwise, defendants would be subject to automatic personal jurisdiction of the location of plaintiff's principal place of business. *Id.* (citation omitted).

Moreover, the mere fact that the site contained the Full Sail trademark next to the words "three piles of shit awarded to Full Sail for being a really shitty school! Congratulations Full Sail!"

---

[10] At oral argument, Spevack/Zero One's counsel represented to the Court that one person has accepted the offer to take such a photo, and that the acceptee received the promised $100 payment from Spevack.

[11] In *Young*, the court looked at the Internet pages placed in the record to determine whether their "general thrust and content" was aimed at an audience in Virginia, the forum state. 315 F.3d at 263. The court concluded that the sites were "not designed to attract or serve a Virginia audience" but rather focused on Connecticut readers because of the hyperlinks to Connecticut weather, traffic, government, and universities. *Id.* The court also assessed whether specific news articles about the plaintiff warden, who alleged libel, were posted with the intent of targeting a Virginia audience. The court found that the sites focused on Connecticut's prisoner transfer policy rather than on Virginia or on the warden himself. *Id.* at 263-64.

(Doc. 25 at ¶ 9 and Doc. 25, Ex. 2), does not indicate that it was purposefully directed at readers in the forum state. Indeed, as *JB Oxford Holdings* held:

> Although [the] cause of action (service mark infringement) is related to [the defendant's] contacts with Florida (using the allegedly infringing mark . . . on web sites that can be viewed in Florida), [the defendant] has not purposefully availed itself of the privilege of doing business in Florida nor should it have reasonably anticipated being haled into court in Florida.

76 F. Supp. 2d at 1367.[12]

The site also does not contain any hyperlinks to commercial sites from which Spevack/Zero One benefit. (Doc. 16 at ¶13).[13] With no evidence of any actual business transaction nor any revenue from sales in Florida, the site is not active here, and it is not reasonable for Spevack/Zero One to anticipate being haled into court in Florida. *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 772 (E.D. Mich. 2001) (holding, in a trademark infringement case, that the site at issue was passive, because the mere posting of domain names for sale did not constitute transacting business and hence did not suffice for purposeful availment); *JB Oxford Holdings*, 76 F. Supp. 2d at 1368.

Plaintiff also implies that even if the site is not "active," it is interactive and thus falls in the middle of the *Zippo* scale. The site, however, does not allow for any interactivity other than the indirect posting of comments. *JB Oxford Holdings*, 76 F. Supp. 2d at 1368. "[M]erely having an interactive web site does not end the court's inquiry into jurisdiction." *Id.* Rather, a court must

---

[12]The additional evidence that the Webmaster for fullsailsucks.com posted a comment on a potential student's Web page (Doc. 25, Ex. 4) does not indicate that the site was active for jurisdictional purposes.

[13]The site apparently contained a hyperlink to UAT as well as to GetaHostNow.com, a site owned by Sloan. (Doc. 16 at ¶11). These links were removed in June 2003. (*Id.*).

assess the quality of the contact between a hypothetical viewer in the forum state and the interactive site at issue. *Id.* Here, the quality of the contact between a Florida viewer and the "interactive" site is low because a Florida viewer cannot conduct a commercial transaction, or directly post comments, or directly request information from the site.

### ii.     Shittyschools.com

In addition, the Court finds that the shittyschools.com site – which allows for the posting of comments about numerous schools, not just Full Sail (Doc. 16 at ¶ 9) – is passive. Spevack/Zero One have not enjoyed any revenue or financial benefit from this site. (Doc. 16 at ¶ 12). Moreover, the site does not contain any links to commercial sites from which Spevack/Zero One benefit. (Doc. 16 at ¶13).[14] Finally, as with fullsailsucks.com, shittyschools.com is not directed at a Florida audience.

### b.   Tortious Conduct Directed Toward Florida and the "Effects Test"

Alternatively, Plaintiff contends that Spevack/Zero One purposefully availed themselves of the privileges of acting in Florida because the alleged tortious conduct is directed solely toward Florida and the effects of the injury are felt solely in Florida. The "effects test" originated in *Calder v. Jones*, 465 U.S. 783 (1984), a non-Internet case that assessed whether a nonresident fairly could be haled into a forum court where the tortious conduct had sufficient effects in the forum state. In *Calder*, entertainer Shirley Jones sued a National Enquirer editor and writer for libel. The Supreme Court held that jurisdiction in California was proper because the defendants

---

[14]Plaintiff has submitted an affidavit indicating that "At the web site for Zero One Entertainment, commercial goods are offered for sale to the general public." (Doc. 25 at ¶12). This paragraph fails to indicate the name of the site, the type of commercial goods offered for sale, and whether any Florida resident bought said goods.

expressly aimed their conduct – writing and publishing an allegedly libelous article – at California. Indeed, the article focused on Jones' activities in California, the harm was suffered in California (because that is where Jones' career was centered), and the defendants knew the harm would be felt in California because it enjoyed its largest circulation there. *Id.* at 788-90.

The *Calder* effects test has three prongs: 1) intentional acts; 2) expressly aimed at the forum state; 3) causing injury, the brunt of which must be felt in the forum state. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998); *see also Ford*, 141 F. Supp. 2d at 774.[15] What must be shown to satisfy those prongs varies by Circuit. At least one district court in this Circuit announced that the effects test is not satisfied merely because the plaintiff's principal place of business is located in the forum state; rather, the site must target readers in that state. *JB Oxford Holdings,* 76 F. Supp. 2d at 1367-68. The Fifth Circuit agrees. In *Revell*, the court found that the plaintiff's residence in the forum state coupled with suffering harm there did not suffice for personal jurisdiction; the audience targeted had to be within the forum state as well. The court thus found that it lacked personal jurisdiction because the interactive online bulletin board at issue was directed "at the entire world . . . not . . . specifically at Texas." 317 F.3d at 475. In addition, the court noted that "there is nothing to compare to the targeting of California readers represented by approximately 600,000 copies of the *Enquirer* the *Calder* defendants knew would be distributed in California, the *Enquirer*'s largest market." *Id.* This Court agrees with *Revell* and *JB*

---

[15]Both *Panavision* and *Ford* differ from the case at bar because in those cases, the plaintiff alleged that the trademark violation occurred by virtue of the domain name itself, whereas in the instant case, Plaintiff alleges that the trademark violation occurred by Defendants' disparaging use of the trademark on the sites.

*Oxford Holdings* to the extent that a site satisfies the *Calder* effects test only if the site targets the readers of the forum state.

### i.     **Fullsailsucks.com**

As to fullsailsucks.com, the *Calder* prongs have not been satisfied.[16] Although it is true that the brunt of any injury caused by Spevack/Zero One's intentional acts necessarily is felt only in Florida, for that is where Full Sail is located, the targeted audience presumably exists throughout the entire United States. Plaintiff has submitted no evidence in contravention of that assumption. For these reasons, Plaintiff has not shown that the site is expressly aimed at a Florida audience and fails to satisfy the *Calder* effects test.

### ii.     **Shittyschools.com**

As to the shittyschools.com site, the brunt of the injury is not felt only in Florida, for the site name and activity is not particular to the Florida Full Sail school. In addition, the site is not expressly aimed at Florida, for, like fullsailsucks.com, it targets readers in all 50 states. Moreover, it is of no relevance that the site contains a hyperlink to and refers to fullsailsucks.com, which, as discussed above, is not expressly aimed at a Florida audience.

Based on the foregoing analysis, Spevack/Zero One lack minimum contacts with Florida and hence the Court cannot exercise personal jurisdiction over them.[17]

---

[16] This Court, like the Fifth Circuit, will reserve resolving the "difficult question" of whether a passive Web site could give rise to personal jurisdiction under *Calder*. *Revell*, 317 F.3d at 472 n.30.

[17] Having found insufficient minimum contacts under both the *Zippo* and *Calder* tests, the Court need not assess the third prong of the Due Process inquiry, fair play and substantial justice, except to say that without sufficient contacts, "it would not comport with traditional notions of fair play and substantial justice to subject [defendant] to personal jurisdiction in Florida." *JB Oxford Holdings*, 76 F. Supp. 2d at 1368. Plaintiff may initiate suit in another federal court that has personal

### 2. Sloan

Plaintiff claims that Sloan purposefully availed himself of the privileges of Florida by acting in concert with Spevack/Zero One. Because, as discussed above, the Court found that it lacks personal jurisdiction over Spevack/Zero One, the Court necessarily must find that it lacks personal jurisdiction over Sloan, the hosting agent.[18]

### IV. Conclusion

For all the foregoing reasons, it is therefore

**ORDERED and ADJUDGED** that:

1) Defendant Spevack/Zero One's Motion to Dismiss (Doc. 14) is **GRANTED**;

2) Defendant Sloan's Motion (Doc. 35) is **GRANTED;** and

3) Defendant Spevack/Zero One's Motion to Strike (Doc. 38) is **DENIED as moot.**

Accordingly, Plaintiff's Complaint against Spevack/Zero One and Sloan is **DISMISSED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida this __21__ day of October, 2003.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

jurisdiction over Defendants.

[18]Because the Court cannot exercise personal jurisdiction over either Spevack/Zero One or Sloan, it need not address whether Plaintiff has failed to state a claim upon which relief may be granted.

F I L E   C O P Y

Date Printed: 10/22/2003

Notice sent to:

   ___   Michael Gay, Esq.
          Foley & Lardner
          111 N. Orange Ave., Suite 1800
          P.O. Box 2193
          Orlando, FL  32802-2193

          6:03-cv-00887    rdo

   ___   Nhan T. Lee, Esq.
          Foley & Lardner
          111 N. Orange Ave., Suite 1800
          P.O. Box 2193
          Orlando, FL  32802-2193

          6:03-cv-00887    rdo

   ___   Terry Marcus Sanks, Esq.
          Beusse, Brownlee, Bowdoin & Wolter, P.A.
          390 N. Orange Ave., Suite 2500
          Orlando, FL  32801

          6:03-cv-00887    rdo

   ___   Lawrence G. Walters, Esq.
          Weston, Garrou & DeWitt
          781 Douglas Ave.
          Altamonte Springs, FL  32714

          6:03-cv-00887    rdo

   ___   Heather R. Schwarz, Esq.
          Weston, Garrou & DeWitt
          781 Douglas Ave.
          Altamonte Springs, FL  32714

          6:03-cv-00887    rdo

   ___   Krista Belanger
          2462 Lake Helen Osteen Road
          Deltona, FL  32738

          6:03-cv-00887    rdo

   ___   Jay M. Cohen
          Jay M. Cohen, P.A.
          P.O. Box 2210
          Winter Park, FL  32790-2210

          6:03-cv-00887    rdo